IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, )
and **HOWARD McDOUGALL**, Trustee, )
)
         Plaintiffs, )
)
vs. ) No. 04 C 6904
)
**WATERLAND TRUCKING SERVICE,** )
**INC.**, a Michigan corporation, )
)
         Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, one of its trustees (collectively, the Pension Fund), sue defendant Waterland Trucking Services, Inc. (Waterland) under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multi-employer Pension Plan Amendment Act of 1980 (MPPAA) for interim partial withdrawal liability payments. Before the court is the Pension Fund's motion for summary judgment. For the reasons given below, I grant the motion.

The MPPAA requires that an employer who withdraws from a multi-employer pension plan must pay its pro rata share of the plan's unfunded vested liability. 29 U.S.C. § 1381. The purpose of withdrawal liability generally is to protect other employers in a multi-employer plan from having to pay the benefits of the

withdrawing employer's employees. *Santa Fe Pacific v. Central States Pension Fund*, 22 F.3d 725, 726-27 (7th Cir. 1994). In this case, Waterland's liability for *partial* withdrawal liability was predicated upon a 70 % decline in its contribution from one plan year to another. 29 U.S.C. § 1385(a)(1).

Even where an employer believes that it has a good faith defense to a claim for withdrawal liability, it must pay first and resolve the dispute later through arbitration. Waterland was obligated by contracts with various labor unions to make contributions to the Pension Fund. In July 2004, the Pension Fund served a notice and demand on Waterland stating that as a result of a decline in Waterland's contributions, Waterland had effected a "partial withdrawal" from the plan and incurred withdrawal liability to the plan in the amount of $304,481.86, as determined under Section 4201(b) of ERISA, 29 U.S.C. § 1381(b). Under the notice and demand, the amount claimed could be paid in a lump sum or in installments beginning September 1, 2004. Waterland made no payments. Instead, it initiated an arbitration. On October 27, 2004, plaintiffs filed this action to obtain payment of all installments past due under the notice plus prejudgment and post-judgment interest, attorneys' fees and costs, and an order compelling Waterland to make its future interim withdrawal liability payments in accordance with the schedule determined by

the Pension Fund. On March 24, 2004, plaintiffs filed their motion for summary judgment.

Waterland does not dispute the facts underlying plaintiffs' claim insofar as they relate to the amount of its contributions to the plan from one year to the next. However, Waterland seeks to avoid the "pay now, dispute later" mechanism of the statute. It argues that it is entitled to an exemption from withdrawal liability provided in ERISA to companies substantially all of whose employees perform work in the building and construction industry (29 U.S.C. § 1383(b) and 1388(d)). Neither ERISA nor MPPAA defines the term "substantially all", but the Seventh Circuit has defined it to mean 85% or more. *Central States Pension Fund v. Robinson Cartage*, 55 F.3d 1318, 1321 (7th Cir. 1995).

Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment I must evaluate admissible evidence in the light most favorable to the non-moving party. I may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Payne v. Pauley*, 337 F.3d 767,770 (7th Cir. 2003). The party who bears the burden of proof on an issue may not rest on the pleadings but must affirmatively demonstrate that there is a genuine issue of fact

that requires trial. *Celotex Corp. v. Catret*, 477 U.S. 317, 324 (1986).

The court has no general equitable power to excuse interim payments. The only basis on which Waterland can avoid having to make interim payments while its liablity is being determined in the statutorily mandated arbitration is to demonstrate *both* that the claim made by the Pension Fund is frivolous (i.e., devoid of rational support in fact or law)(*Trustees of Chicago Truck Drivers v. Rentar Ind.*, 951 F.2d 152, 155 (7th Cir. 1991) and that making the requested interim payments will cause Waterland irreparable harm. *Robbins v. Mc Nichols Transp. Co.*, 819 F.2d 682, 685 (7th Cir. 1987). If a contributing employer cannot make this double showing, the trial court has no discretion to excuse the interim payments.

I cannot conclude that the Pension Fund's claim is frivolous. Putting aside the question of the quality of Waterland's proof as to what a given percentage of its employees actually do that is construction related, its argument is clearly based on the notion that work performed outside the boundaries of construction sites is work in the "building and construction industry" so long as the products its drivers deliver to the sites are used in construction and the drivers provide some work on site. Waterland Memorandum at 3-4. The legislative history of ERISA shows that Congress intended that the words "building and construction industry" as employed in

4

ERISA should "be given the same meaning as has developed in the administration of the Taft-Hartley Act." Rep. No. 869, 96th Congress, Sec. Sess., Part 1 at 67, 76, reprinted in 1980 U.S. Code Congressional and Administrative News 2918, 2935. Accordingly, neither the National Labor Relations Board (NLRB) nor the courts have been willing to give the term the expansive meaning claimed by Waterland. Compare *NLRB v. International Brotherhood of Teamsters Local 294*, 342 F. 732,738-39 (6th Cir. 1991); *In re Tedesca Corp.*, 1996 WL 138068, (N.L.R.B. Office of General Counsel, Advice Div., Feb 2, 1996). It is clear that drivers who merely deliver materials to a construction site are not engaged in the "construction industry" for all purposes, and that the Pension Fund's position in arguing that Waterland's claimed exemption does not apply, is at least a colorable argument and not a frivolous one.

Moreover, even if the exemption were to apply, Waterland's factual showing could not be held to raise a triable issue of fact. The affidavits it submits are conclusory in nature, and there is no way of determining from the exhibits attached thereto what percentage of Waterland's employees performs work directly related to construction or what percentage of their time is spent by its drivers performing construction related duties on construction sites.[1] As the Pension Fund has argued, Waterford's affidavits do

---

[1] The drivers would have to perform a substantial quantity of work on site to so qualify. *In re Tedesca Corp.*, 1996 WL 138068, (N.L.R.B. Office of General Counsel, Advice Div., Feb 2, 1996).

not give sufficient information nor cover the requisite time period to defeat summary judgment.

In view of my holding that Waterland has failed to demonstrate that the claim of the Pension Fund is frivolous, it would be superfluous to consider Waterland's claim that it will suffer irreparable injury if it is required to make the payments directed by the Pension Fund. *Trustees of Chicago Truck Drivers v. Rentar Ind.*, 951 F.2d 152, 155 (7th Cir. 1991)); *Central States, Southeast and Southwest Areas Pension Fund v. Manning Motor Express, Inc.*, 125 F.Supp.2d 1113,1117 (N.D.Ill. 2000).

The motion for summary judgment is granted. Under 29 USC § 1132(g)(2), the Pension Fund is entitled to recover interest on the missed interim withdrawal liability payments, liquidated damages, costs and, in the discretion of the court, attorneys' fees. The liquidated damages awarded are mandatory. *Central States v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992).

The Pension Fund has represented that because both the amount of delinquent payments and interest due change on a monthly basis, it will require two weeks in which to prepare a schedule showing the amounts due. The Pension Fund is directed to submit proof of the claimed amount of the interim payments, plus any interest, liquidated damages and fees and costs the Fund seeks, on or before June 28, 2005. Defendant is directed to respond to the Fund's submission concerning the judgment amount on or before July 12,

2005. The case is set for status hearing and possible entry of a final judgment on July 15, 2005 at 10:00 a.m.

                                            **ENTER ORDER:**

                                            _____
                                            **Elaine E. Bucklo**
                                            United States District Judge

Dated: June 7, 2005